**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM ENGEL, et al., | : |
| | : CIVIL ACTION NO. 07-5354 (MLC) |
| Plaintiffs, | : |
| | : **MEMORANDUM OPINION** |
| v. | : |
| | : |
| MICHELLE R. RICCI, et al., | : |
| | : |
| Defendants. | : |

**COOPER, District Judge**

Plaintiffs, William Engel ("Engel") and Lucy Hilford-Engel ("Hilford" and together with Engel, "Plaintiffs") commenced this action against Michelle R. Ricci ("Ricci"), George W. Hayman ("Hayman"), James Barbo ("Barbo"), Patricia Le Flore ("Le Flore"), Stephen Dobron ("Dobron"), Pamela Trent ("Trent"), and Samuel Atchison ("Atchison" and together with the other defendants, "Defendants") alleging, inter alia, that Defendants (1) violated their constitutional right to marry under 42 U.S.C. § 1983 ("Section 1983") and the Fourteenth Amendment to the United States Constitution, and (2) acted callously and wantonly indifferent toward Plaintiffs' right to get married.  (Dkt. entry no. 1, Compl.)  Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 5.)  The Court, for the reasons stated herein, will deny the motion.

**BACKGROUND**

The Court, for the purpose of addressing this motion only, will accept as true the following factual allegations contained in the complaint. See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004).

Engel is currently incarcerated in the New Jersey State Prison (the "Prison"). (Compl., at ¶ 6.) At all times relevant to the complaint (1) Ricci was the Associate Administrator at the Prison and was responsible for overseeing the policies and practices of the Prison's Marriage Committee, (2) Hayman was the Commissioner of the New Jersey Department of Corrections ("NJDOC"), (3) Barbo was Director of the Division of Operations for the NJDOC, (4) Le Flore was the Prison's Marriage Committee Coordinator, and (5) Dobron, Trent, and Atchison were, inter alia, members of the Prison's Marriage Committee. (Id. at ¶¶ 8-14.)

Plaintiffs submitted a "Marriage Request Form" to the Prison administration on September 8, 2005. (Id. at ¶ 16.) The Marriage Committee denied Plaintiffs' marriage request on January 20, 2006. (Id. at ¶ 17.) The Marriage Committee listed "security concerns; high risk, escape risk; immigration detainer" as its reasons for the denial. (Id. at ¶ 29.) Thereafter, on March 27, 2006, Hilford sent a letter to Hayman appealing from

the Marriage Committee's decision.  (Id. at ¶ 18.)  Barbo responded on behalf of Hayman and denied the appeal.  (Id. at ¶ 19.)

Hilford, on April 2, 2006, sent a second letter to Hayman requesting (1) reconsideration of Barbo's denial of her appeal, and (2) clarification as to why Engel was designated as a "high risk" inmate.  (Id. at ¶ 20.)  Hayman responded in a letter dated May 3, 2006.  (Id. at ¶ 21.)  Hayman affirmed Barbo's denial of the appeal because he "found the decision to be consistent with New Jersey Administrative Code 10A:17-3."  (Id. at ¶ 21.)  After receiving Hayman's response and determination, Plaintiffs appealed both the Marriage Committee's denial of their marriage request and Hayman's affirmance of that denial to the New Jersey Appellate Division ("State Court").  (Id. at ¶ 22.)

The New Jersey Attorney General's Office, on behalf of the defendants in the State Court action, moved to remand the matter to the NJDOC for reconsideration of the Marriage Committee's determination.  (Id. at ¶ 23.)  In support of the motion to remand, the New Jersey Attorney General's Office stated that "the Marriage Committee did not sufficiently detail Engel's immigration status and, more specifically, whether this status would legally preclude Engel from marrying[, and] [t]he Committee was also not sufficiently clear as to what escape or security threats Engel's marriage would present to the [P]rison."  (Id.)

The State Court granted the motion to remand and directed the NJDOC to reconsider the Marriage Committee's determination within thirty days. (Id. at ¶ 25.) On April 11, 2007, the Prison granted Plaintiffs' marriage request. (Id. at ¶ 26.) Plaintiffs were married on May 21, 2007. (Id.)

## DISCUSSION

### I. Legal Standards

#### A. Motion to Dismiss Standard

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. Chubb Corp., 394 F.3d at 134; Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001). However, the Court need not credit bald assertions or legal conclusions alleged in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. See Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

### B. Legal Standards Governing Section 1983 and the Fourteenth Amendment

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the United States Constitution or the laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (noting that Section 1983 does not, by itself, create rights, but instead

5

provides remedies for deprivation of rights established by the Constitution or other federal laws). "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Groman, 47 F.3d at 638. Here, the Defendants were employees of the NJDOC, employees of the Prison, or members of the Prison's Marriage Committee, and thus, were clearly acting under color of state law at all times relevant to the complaint.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated. See id. at 633. Officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility. However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Instead, personal involvement in the alleged wrong-doing must be shown. Id. Here, Plaintiffs allege that each of the Defendants engaged in conduct that directly violated their right to marry under the Fourteenth Amendment. (See generally Compl.)

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause protects individuals against two types of government action.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty". When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as procedural due process.

United States v. Salerno, 481 U.S. 739, 746 (1987) (internal cites omitted) (discussing Fifth Amendment's due process clause, which contains identical language).

To prevail on a substantive due process claim, the plaintiff must demonstrate that he or she has a "fundamental" property interest or right under the United States Constitution. Hill v. Bor. of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006). Further, to state a procedural due process claim under Section 1983, the plaintiff must allege (1) a deprivation of an interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property, and (2) that the procedures available to the plaintiff did not provide due process of law. Hill, 455 F.3d at 234-35; Solomon v. Phila. Hous. Auth., 143 Fed.Appx. 447, 452 (3d Cir. 2005). "In order to state a claim for failure to provide sufficient procedural due process, a plaintiff must have taken advantage of the processes that are available to her, unless those processes are unavailable or patently inadequate." Solomon, 143 Fed.Appx. at 453; Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Procedural due process is a flexible requirement

and "calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (cite omitted).

**II. Legal Standards Applied Here**

Defendants argue that Plaintiffs are presently married, and "any delay in their marriage while the [NJDOC] reached its decision is not sufficient to state a constitutional claim." (Defs. Br., at 3.) In contrast, Plaintiffs argue that Defendants delayed their marriage in violation of their rights under the Fourteenth Amendment. (See Compl.) Specifically, Plaintiffs allege, inter alia, that (1) they would have been eligible for social security benefits beginning in August 2006 if Defendants had permitted them to marry before such time period, (2) Defendants, particularly the Marriage Committee, used false statements, unsubstantiated claims, and a fabricated record to initially deny their marriage request, and (3) Defendants demonstrated deliberate indifference to their constitutional rights "[a]s there was no evidence supporting the reasons for denying the Engels their right to marry". (Compl., at ¶¶ 27-34; Pls. Br., at 4-5.) Plaintiffs assert that they incurred measurable and inordinate damages as a result of Defendants' conduct. (Pls. Br., at 3.) Moreover, they assert that Defendants' "deliberate abuse of power" caused them to lose "thousand [sic] of dollars in social security benefits, plus the

8

costs of the subsequent appeals and this suit." (Id. at 5.) Plaintiffs ultimately contend that Defendants denied their marriage request and subsequent appeals in retaliation for their many complaints concerning Engel's treatment at the Prison. (Id. at 5-6.)

The right to marry is part of the fundamental "right of privacy" implicit in the Fourteenth Amendment's due process clause. Zablocki v. Redhail, 434 U.S. 374, 384 (1978). Thus, individuals are entitled to make decisions related to marriage without unjustified government interference. Id. at 385. However, not all regulations relating to "the incidents of or prerequisites for marriage" are subject to rigorous scrutiny. Id. at 386. Instead, "reasonable regulations that do not significantly interfere with decisions to enter into the martial relationship may legitimately be imposed." Id.; see Young v. Vaughn, No. 98-4630, 2000 U.S. Dist. LEXIS 10667, at *4-*8 (E.D. Pa. July 31, 2000) (noting that there is no constitutional "right to maintain a meaningful marriage" and ultimately concluding that the plaintiff did not have a constitutionally protected right to visit her husband in prison).

The religious and personal aspects of marriage are not affected by incarceration or the need to maintain legitimate corrections goals. Turner v. Safley, 482 U.S. 78, 96 (1987). Further, "marital status is often a pre-condition to the receipt

of government benefits (e.g., Social Security benefits), property rights (e.g., tenancy by the entirety, inheritance rights), and other less tangible benefits (e.g., legitimation of children born out of wedlock)", and these incidents of marriage are also not affected by incarceration.  Id.  Thus, prison inmates are entitled to have a constitutionally protected marital relationship.  Id.  However, a person's right to marry is subject to substantial restrictions after such person is incarcerated.  Id. at 95.  Indeed, a prison regulation may impinge on an inmate's constitutional rights if such regulation is reasonably related to a legitimate penological interest.  Id. at 89.[1]

The Seventh Circuit, in Martin v. Stolka, addressed the constitutional implications of delaying an inmate's marriage. 329 F.3d 919 (7th Cir. 2003).  There, a prison inmate inappropriately touched his girlfriend during a visit, and thus, the girlfriend's visitation rights were restricted for an indefinite duration.  Id. at 920.  Several months later, the inmate and his girlfriend requested permission from the prison

---

[1] Plaintiffs do not challenge any specific Prison regulation limiting or imposing restrictions on an inmate's right to marry. Thus, this Court need not determine whether any such regulation is reasonably related to a legitimate penological interest.  See id. at 89 (setting forth standard for evaluating prison regulations that impose on inmate's constitutional rights); see also id. at 96-99 (concluding that Missouri marriage regulation prohibiting inmates from marrying unless the prison superintendent found compelling reasons to approve the marriage was not reasonably related to a legitimate penological objective).

warden to marry.  Id.  The warden denied their request because the girlfriend was still prohibited from visiting the prison.  Id.  Thus, the inmate and his girlfriend commenced an action against the director of the Department of Corrections, the prison warden, and other prison officials alleging that they had violated the couple's due process rights under the Fourteenth Amendment.  Id.  The district court dismissed the complaint for failure to state a claim under Rule 12(b)(6).  Id.  Nevertheless, the girlfriend's visitation rights were reinstated shortly thereafter, and the couple was later permitted to marry.  Id.

On appeal, the Seventh Circuit noted that the plaintiffs' marriage had been deferred for twelve months as a result of the warden's initial denial of the couple's marriage request.  Id.  The court also noted, inter alia, that marriage often has religious or spiritual significance and "may affect eligibility for social welfare programs or health benefits, may reduce (or increase) income taxation on joint income, and may affect inheritance when one spouse dies".  Id. at 921.  However, the court stated that the plaintiffs had not alleged that (1) they had any interest in the spiritual or religious aspects of marriage, or (2) an earlier marriage would have entitled them to reduced taxes or receipt of any type of benefits.  Id.

The Seventh Circuit explained that after Turner, "a complaint based on prisoners' interest in marriage states a

11

claim; a legitimate penological justification for refusing to allow the marriage is a defense that cannot be adjudicated under [Rule] 12(b)(6)." Id.  The court then stated that because there was no record, it could not determine whether the defendants could demonstrate a legitimate penological justification for the marriage delay.  Id.  Nevertheless, the Seventh Circuit determined that the plaintiffs still could not proceed with their action.  Id.  The Seventh Circuit noted that "[t]hough the complaint protests a denial of marriage, we know now that the warden did not preclude it.  He only postponed it."  Id. at 921-22.  The court emphasized that (1) Turner did not say that every marriage delay violates the Constitution, (2) restrictions on visitation may justify deferring a marriage, and (3) "[n]o case . . . concludes that a year's delay is unconstitutional when the prisoner's misbehavior has led to curtailment of visiting rights."  Id. at 922.  Accordingly, the Seventh Circuit concluded that the defendants were entitled to qualified immunity in the present case, but warned that "in the future district judges should not dismiss similar complaints at the pleading stage." Id.

　　　Plaintiffs here have sufficiently stated a substantive due process claim against the Defendants.  Plaintiffs had a fundamental right to marry.  See Zablocki, 434 U.S. at 384 (noting that the right to marry is part of the fundamental "right

12

of privacy" implicit in the Fourteenth Amendment's due process clause); see also Hill, 455 F.3d at 235 (stating that to prevail on a substantive due process claim, the plaintiff must demonstrate that he or she has a "fundamental" property interest or right). Thus, they were entitled to decide whether and when to marry so long as they complied with all reasonable regulations imposed by Defendants that did not significantly interfere with their decision to marry. See Zablocki, 434 U.S. at 386.

Plaintiffs allege that their marriage request was not granted until nineteen months after they initially made such request, and five months after the date by which the State Court directed the NJDOC to reach a determination. (See Compl., at ¶¶ 16, 26.) Plaintiffs also assert that they incurred specific damages as a result of this substantial delay, namely that they lost their entitlement to social security benefits and incurred substantial costs in appealing from the Marriage Committee's initial denial of their marriage request. (Id. at ¶ 28; Pl. Br., at 3, 5.) See Turner, 482 U.S. at 96 (stating that certain incidents of marriage, including the receipt of social security benefits, are not affected by incarceration).[2] Further,

---

[2] Defendants do not dispute Plaintiffs' assertion that they would have been entitled to social security benefits in August 2006 had their initial marriage request been granted. (See generally Defs. Br.) However, it is unclear whether Plaintiffs would have been entitled to such benefits because the Social Security program bars payment of retirement benefits to imprisoned felons but permits payments to be made to any other

13

Plaintiffs contend that Defendants' purported reasons for denying their initial marriage request were false and unsubstantiated because (1) the Marriage Committee did not have any information suggesting that Engel would definitely be "detained" by the Immigration and Naturalization Service, (2) the Marriage Committee asserted that Engel was "high risk" when his Prison "face sheet" lists his custody designation as only "medium", and (3) Engel was labeled an "escape risk" simply because Prison staff believed he could finance an escape. (See Compl. at ¶¶ 27-34.) Indeed, Plaintiffs emphasize that after they appealed the denial of their marriage request to the State Court, the New Jersey Attorney General's Office asked that the matter be remanded to the NJDOC for reconsideration because "the Marriage Committee did not sufficiently detail Engel's immigration status and, more specifically, whether this status would legally preclude Engel from marrying[, and] [t]he Committee was also not sufficiently clear as to what escape or security threats Engel's marriage would present to the [P]rison." (Id. at ¶ 23.)

    The Court thus concludes that this case is distinguishable from Martin in which (1) the marriage was delayed by only twelve months, (2) the plaintiffs did not allege that their ability to

---

person entitled to the prisoner's benefits. 42 U.S.C. § 402(x)(1); 20 C.F.R. § 404.468(a). The applicable statute is constitutional as applied to prisoners. See Butler v. Apfel, 144 F.3d 622 (9th Cir. 1998); Graham v. Bowen, 648 F.Supp. 298 (S.D. Tex. 1986); Clary v. Bowen, 637 F.Supp. 1186 (W.D.N.C. 1986).

marry sooner would have affected their eligibility for any type of benefits, (3) the Seventh Circuit concluded that the defendants asserted basis for the marriage delay, the girlfriend's restricted visitation, was substantiated and justified deferring the marriage, and (4) the Seventh Circuit emphasized that the inmate's misbehavior led to the curtailment of his girlfriend's visiting rights and the ultimate delay of his marriage.  See Martin, 329 F.3d at 920-22.  Accordingly, Plaintiffs have stated a claim that Defendants' denial of their initial marriage request and subsequent appeals was not related to any legitimate penological interest, and thus, Defendants impinged on their right to marry under the Fourteenth Amendment. See Turner, 482 U.S. at 89, 95-96.  Therefore, Plaintiffs have sufficiently alleged that Defendants violated the contours of their constitutional right to marry.  See Leamer v. Fauver, 288 F.3d 532, 536 (3d Cir. 2002) (stating that the first step in analyzing a substantive due process claim is to determine whether the exact contours of the fundamental right have been violated).[3]

---

[3] At this stage in the litigation, the Court need not address whether Defendants' conduct towards Engel was wanton or malicious, entitling Plaintiffs to punitive damages.  (See Compl., at ¶¶ 35-43 ("Second Cause of Action").)

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will deny Defendants' motion to dismiss the complaint.  The Court will issue an appropriate order.


                                                s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated: <u>May 22, 2008</u>